# UNITED STATES DISTRICT COURT
# MIDDLE DISTRICT OF FLORIDA
# ORLANDO DIVISION

**ROMINOV INVESTMENT SERVICES INC., GUSTAVO JOHAN ROMER VALERI and NINA VALENTINA IVANOFF DE ROMER,**

     **Plaintiffs,**

v.              Case No: 6:19-cv-427-Orl-31EJK

**U.S. DEPARTMENT OF HOMELAND SECURITY, UNITED STATES CITIZENSHIP AND IMMIGRATION SERVICES and FRAUD DETECTION AND NATIONAL SECURITY DIRECTORATE OF THE U.S. CITIZENSHIP AND IMMIGRATION SERVICES,**

     **Defendants.**

_____/

## REPORT AND RECOMMENDATION

This cause comes before the Court on cross-motions for summary judgment filed by Plaintiffs and Defendants. (Docs. 29 & 28, respectively.) The parties have responded in opposition to each other's motions (Docs. 30, 31), and Defendants have replied (Doc. 32). Upon consideration of the briefing and the exhibits thereto, I respectfully recommend that Plaintiffs' Motion for Summary Judgment (Doc. 29) be denied and Defendants' Motion for Summary Judgment (Doc. 28) be granted.

  **I.**  **BACKGROUND**

In this case, brought pursuant to the Freedom of Information Act ("FOIA"), 5 U.S.C. § 552, Plaintiffs Rominov Investment Services, Inc., Gustavo Johan Romer Valenti, and Nina Valentina Ivanoff De Romer, seek the disclosure and release of agency records from Defendants,

United States Department of Homeland Security ("DHS"), United States Citizen and Immigration Services ("USCIS"), and Fraud Detection and National Security Directorate of USCIS ("FDNS"), concerning Plaintiffs' July 3, 2018 FOIA request. (Doc. 14, ¶¶ 1, 14.) The following appears to be the undisputed facts of the case, taken principally from Jill A. Eggleston's[1] Declaration (Doc. 28-1) and Supplemental Declaration (Doc. 30-1) (collectively, the "Eggleston Declarations"), as well as from the parties' Motions for Summary Judgment (Docs. 28, 29).

On January 17, 2018, USCIS issued a Notice of Intent to Revoke Plaintiff Rominov Investment Services, Inc.'s Form I-129, Petition for a Nonimmigrant Worker, filed on behalf of Plaintiff, Gustavo Romer Valeri. Six months later, on July 3, 2018, Plaintiffs' counsel, on behalf of Rominov Investment Services, Inc., emailed a FOIA request to USCIS seeking "a copy of the complete file, any and all documents, including any/all annotations of administrative site visits performed by USCIS/FDNS – Orlando/Jacksonville on or about August 8, 2016 and February 7, 2017, and any other visits or attempts to visit related to Rominov Investment Services, Inc." Plaintiffs also included an "Authorization for Release of Information" signed by Plaintiff, Nina Valentina Ivanoff De Romer, Administrative Manager of Rominov Investment Services, Inc., dated July 3, 2018. According to Defendants, due to the complexity of Plaintiffs' FOIA request and the need to search across agencies for responsive documents, USCIS assigned Plaintiffs' request to its complex FOIA processing track – Track II. USCIS also invoked its right to additional processing time pursuant to 5 U.S.C. § 552(a)(6)(B).

---

[1] Eggleston is the Associate Center Director in the FOIA and Privacy Act Unit, National Records Center, USCIS, within the DHS. (Doc. 28-1, ¶ 1.) In her role, Eggleston supervises over 200 information access professionals who are responsible for the orderly processing of essentially all requests for access to USCIS records and information pursuant to FOIA and other directives. (*Id.* ¶ 2.) In this case, she was responsible for overseeing and coordinating the search conducted by USCIS in response to this request and is personally familiar with the search conducted by USCIS. (*Id.* ¶ 3.)

Due to the nature of Plaintiffs' FOIA request, USCIS was required to identify relevant program offices within USCIS that would be most likely to have responsive records, as there is no central USCIS file that would contain records responsive to Plaintiffs' request. To that end, Defendants identified three USCIS agency offices—Field Office Directorate ("FOD"), Office of Service Center Operations ("SCOPS"), and FDNS—which could conceivably have responsive records. However, as USCIS FOIA staff lack access to FOD, SCOPS, and FDNS records systems and databases necessary to conduct a FOIA search of this nature, USCIS had to rely on and work with the individual agency programs to conduct a search of the agency's records.

USCIS contacted staff within the USCISFOD, which oversees the operations of USCIS Field and District Offices across the United States, including FDNS staff assigned to USCIS Field and District Offices, to inquire whether they had any records pertaining to site visits to Rominov Investment Services, Inc. USCIS FOIA staff established a FOIA point-of-contact at FOD. The FOIA point-of-contact at FOD then conducted searches of FOD's email and hardcopy records using the name of the business, Rominov Investment Services, Inc., its Florida address, and the dates of the FDNS site visits. However, on or about September 17, 2018, FOD reported to USCIS that it had not located any responsive records. FOD then suggested that USCIS FOIA staff contact the USCIS SCOPS and inquire whether it might have any responsive records.

USCIS FOIA contacted SCOPS to search for responsive records. SCOPS staff utilized receipt numbers affiliated with the USCIS Form I-129 petitions submitted by individuals associated with Rominov Investment Services, Inc. Using these numbers, SCOPS personnel queried USCIS's Computer Linked Application Management System, its computer database which contains electronic records pertaining to individual immigration applications and petitions submitted to USCIS. However, the SCOPS point-of-contact informed USCIS FOIA staff that it

did not locate any responsive records that pertained to site visits conducted by FDNS at Rominov Investment Services.

USCIS FOIA also contacted officials within FDNS and requested that they conduct a search for records pertaining to any site visits by FDNS to Plaintiffs' place of business. FDNS is the group that conducts workplace and home visits of applicants, petitioners, and beneficiaries that seek immigration benefits from USCIS. On or about October 29, 2018, FDNS staff provided USCIS with immigration records that it believed might be responsive. These records related to Plaintiff Nina Valentina Ivanoff de Romer. The records consisted of USCIS immigration forms, agency decision letters, and law enforcement database results, but USCIS FOIA staff determined none of the records were responsive because they did not relate to any *site visit* by USCIS officials to Plaintiffs' place of business or any other location affiliated with officials of Plaintiffs' business operations.

USCIS FOIA staff also queried a USCIS database, known as the Person Centric Query System, to locate any petitions or applications submitted by Plaintiffs to USCIS using keyword searches. This search revealed several Form I-129s, Petition for Nonimmigrant Worker, submitted to USCIS on behalf of individuals that worked for or were otherwise affiliated with Rominov Investment Services, Inc. Relevant Form I-129s are maintained in alien files ("A-files") affiliated with the I-129 beneficiary. USCIS FOIA staff thus had reason to believe that records pertaining to FDNS site visits of Plaintiffs' place of business could be located in the beneficiaries' A-files. However, no FDNS site visit records were located in the subject A-files. Moreover, Rominov Investment Services does not have an A-file because it is a business organization, not an individual.

On March 9, 2019, Plaintiffs filed their initial Complaint. (Doc. 1.) On June 28, 2019, Plaintiffs filed an Amended Complaint that named DHS, USCIS, and FDNS USCIS as Defendants. (Doc. 14.)

On June 14, 2019, after Plaintiffs had initiated this case, Plaintiffs' counsel contacted Defendants' counsel to provide a copy of two USCIS business cards that were left by FDNS officers at Rominov Investment Services, Inc., following site visits there on August 8, 2016, and on February 17, 2017. Upon obtaining this information, Defendants' counsel forwarded the information to USCIS agency counsel the same day. With this information, USCIS FOIA contacted FDNS, provided the point-of-contact with a copy of the two business cards, and asked whether the cards belonged to FDNS staff and, if so, whether those individuals could be contacted to inquire about any site visits that they conducted at Plaintiffs' business and to produce responsive records. FDNS then queried the FDNS law enforcement database ("FDNS-DS"), which contains records pertaining to FDNS investigations, using the name of Plaintiff's business, the dates of the site visits, and the names of the FDNS Immigration Officers on the business cards.

The search of the FDNS-DS located responsive records. Further, FDNS staff conducted a review of FDNS email records using the same search criteria and located agency emails pertaining to the February 17, 2017 FDNS site visit, which were also responsive. Upon review, USCIS FOIA staff determined the records were responsive as they pertained to a USCIS site visit to Rominov Investments, Inc. on February 17, 2017.

On August 12, 2019, USCIS FOIA made its first production to Plaintiffs, which consisted of 151 pages of records—55 pages were released in their entirety, 3 pages were released in part, and 93 pages were withheld in full. USCIS then continued to engage with FOD, SCOPS, and FDNS in an attempt to locate additional responsive documents based on the business cards

provided by Plaintiffs' counsel. The FDNS point-of-contact was able to identify FDNS email records that included photographs taken during the FDNS site visits on August 8, 2016. FDNS produced these additional records to USCIS FOIA, which reviewed the records and determined that they were responsive. Thus, on October 3, 2019, USCIS produced these additional responsive records to Plaintiffs. This production consisted of 42 pages of records—9 pages were released in their entirety and 33 pages were released in part. Finally, on February 20, 2020, USCIS produced certain additional pages that had been withheld in full from the August 2019 production. This production was the final production of records to Plaintiffs in this case, with USCIS FOIA informing Plaintiffs it had completed its search for responsive records.

## II.     STANDARD

Federal Rule of Civil Procedure Rule 56(a) provides that "[t]he court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). An issue of fact is "genuine" only if "a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). A fact is "material" if the fact could impact the outcome of the lawsuit under the governing law. *Id.* The moving party bears the initial burden of identifying those portions of the record demonstrating a lack of genuine disputes of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986); *Hickson Corp. v. N. Crossarm Co.*, 357 F.3d 1256, 1260 (11th Cir. 2004). If the moving party shows "an absence of evidence to support the nonmoving party's case," the burden then shifts to the nonmoving party to demonstrate that there are, in fact, genuine disputes as to material facts. *Celotex*, 477 U.S. at 325; *see also Porter v. Ray*, 461 F.3d 1315, 1320 (11th Cir. 2006). In determining whether a genuine dispute as to material fact exists, the Court must read the record and the evidence presented in the light most favorable to the

nonmoving party. *See Porter*, 461 F.3d at 1320. Further, "FOIA cases should be handled on motions for summary judgment, once the documents in issue are properly identified." *Miscavige v. I.R.S.*, 2 F.3d 366, 369 (11th Cir. 1993).

### III.   DISCUSSION

The Supreme Court has emphasized that FOIA's "basic policy is in favor of disclosure." *NLRB v. Robbins Tire & Rubber Co.,* 437 U.S. 214, 220 (1978) (internal quotation marks omitted); *see also Dep't of Air Force v. Rose,* 425 U.S. 352, 361 (1976) (stating the purpose of FOIA is "to pierce the veil of administrative secrecy and to open agency action to the light of public scrutiny") (internal quotation marks omitted). Thus, "[u]nless a document falls into one of the nine recognized exemptions from disclosure under FOIA, it is due to be disclosed." *Miccosukee Tribe of Indians of Fla. v. United* States, 516 F.3d 1235, 1253 (11th Cir. 2008).

#### A.   Adequacy of Search

In their Motion for Summary Judgment, Plaintiffs first contend that Defendants have failed to conduct an adequate search for relevant records. (Doc. 29 at 3–6.) To determine whether an adequate search was conducted, the Court must determine whether the information contained in the Eggleston Declarations provides "sufficient evidence . . . to determine whether the [agencies] 'conducted a search reasonably calculated to uncover all relevant documents.'" *Miccosukee Tribe*, 516 F.3d at 1249 (quoting *Ray v. U.S. Dep't of Justice*, 908 F. 2d 1549, 1558 (11th Cir. 1990), *rev'd on other grounds*, *U.S. Dept's of State v. Ray*, 502 U.S. 164 (1991)). "An affidavit from a government official concerning a government agency's search in response to a FOIA request is sufficient evidence to establish that the search was 'reasonably calculated to uncover all relevant documents' provided that the affidavit is 'relatively detailed, nonconclusory, and submitted in good faith.'" *Karantsalis v. U.S. Dep't of Justice*, 635 F.3d 497, 500 (11th Cir. 2011) (quoting

*Ray*, 908 F.2d at 1558).[2]

Plaintiffs assert that the first Eggleston Declaration[3] is devoid of information about who conducted what searches and where. (Doc. 29 at 5.) Plaintiffs argue that while the Declaration generally explains the roles of the three program offices within USCIS having responsive documents—FDNS, FOD, and SCOPS—her description of the searches conducted within each agency is insufficient. (*Id.*) Specifically, Plaintiffs contend that the Eggleston Declaration fails to: (1) describe what kinds of records the offices keep, which records or databases the office search, or how the offices conducted their search; (2) state that she is personally aware of the search procedures used within each agency office that received Plaintiffs' FOIA request or the actual searches performed by those offices after receiving Plaintiffs' FOIA request; (3) list the search terms used by each agency office; (4) specify which responsive records came from which office in the August and October 2019 productions; and (5) explain why the supplemental production in February 2020 contained responsive documents. (*Id.* at 5–6.)

To support the adequacy of its search, Defendants rely on the Eggleston Declaration (Doc. 28-1) and, presumably in response to Plaintiffs' numerous concerns identified in their Motion, filed a Supplemental Declaration to further clarify the agency's searches. While the Eggleston Declaration, standing alone, left several key questions unanswered regarding the exact nature of

---

[2] Plaintiffs rely heavily on cases out of the D.C. Circuit that interpret what it means for an agency to have conducted a reasonable FOIA search. (Doc. 29 at 4–5.) However, this Court is required to follow the law set forth in the Eleventh Circuit, whose standards do not align entirely with those of the D.C. Circuit on this discrete issue.

[3] At the time Plaintiffs filed their Motion for Summary Judgment, Plaintiffs did not yet have available to it Eggleston's Supplemental Declaration, which was filed in support of Defendants' opposition to Plaintiffs' Motion for Summary Judgment. However, Plaintiffs chose not to file a reply to address the Supplemental Declaration. The undersigned notes, however, that Plaintiffs do somewhat address the Supplemental Declaration in their opposition to Defendants' Motion for Summary Judgment.

the searches conducted here, the Supplemental Declaration, read in conjunction with the Declaration, sets forth sufficient detail regarding the search conducted in each office. (*See* Doc. 30-1, ¶¶ 5–18.)

Addressing Plaintiffs' arguments, Ms. Eggleston states that she is personally aware of USCIS's standard process for responding to FOIA requests, and that she personally oversaw the search conducted by USCIS in this case. (Doc. 28-1 ¶ 3.) She also clarified in the Supplemental Declaration the exact search terms used and the exact databases consulted by each office. (Doc. 30-1, ¶¶ 5–18.) While it is true that Defendants did not specify which responsive records came from which office in the August and October 2019 productions, and do not set forth every database that could have been searched, Plaintiffs cite no legal authority requiring Defendants to do so. Defendants must search those systems where they believe responsive records are likely to be located and produce the responsive records. *See Lee v. U.S. Att'y for S. Dist. of Fla.*, 289 F. App'x 377, 380 (11th Cir. 2008) (unpublished). "The search need not be exhaustive." *Id.* The Court does question why the FDNS-DS and the FDNS e-mail system were not initially searched, but the fact remains that it was searched after Plaintiffs provided Defendants with additional information, so Plaintiffs have not suffered any prejudice. And with regard to the supplemental production in February 2020, which contained responsive documents, Defendants clarify that those documents were initially withheld in full in the August 2019 production; the February 2020 production of the FDNS Statement of Facts released additional information that had previously been withheld. (Docs. 30 at 11; 28-1 at 21, n.9.)

In sum, the undersigned recommends that the Court find that the Eggleston Declarations sufficiently comply with the Eleventh Circuit's requirements regarding reasonableness because they set forth sufficient detail, are non-conclusory, and appear to be submitted in good faith. The

undersigned further recommends finding that Plaintiffs have not met their burden to demonstrate that the search was not reasonable.

### B.  The *Vaughn* Indices and Use of Exemptions

Plaintiffs next contend that Defendants have improperly withheld documents based on the exemptions asserted in the *Vaughn* Index contained in the Eggleston Declarations. (Doc. 29 at 11–19.) Plaintiffs contest Defendants' exemptions invoked in both the August and October 2019 productions. Defendants' August 12, 2019 production consisted of 151 responsive pages, wherein 53 pages were released in their entirety, 57 pages were released in part, and 41 pages were withheld in full. (Doc. 29 at 12.) Defendants' October 2019 production consisted of 42 responsive pages, wherein 9 pages were released in their entirety and 33 pages were released in part. (*Id.*)

An agency may withhold documents responsive to a FOIA request only if the responsive documents fall within one of nine enumerated statutory exemptions. *See* 5 U.S.C. § 552(b); *Miccosukee Tribe of Indians*, 516 F.3d at 1253. The agency bears the burden of justifying the withholding. *Bigwood v. U.S. Agency for Int'l Dev.,* 484 F. Supp. 2d 68, 74 (D.D.C. 2007). "To enable the Court to determine whether documents properly were withheld, the agency must provide a detailed description of the information withheld through the submission of a so-called '*Vaughn* index,' sufficiently detailed affidavits or declarations, or both." *Id.* Additionally, FOIA requires that "[a]ny reasonably segregable portion of a record shall be provided . . . after deletion of the portions which are exempt," 5 U.S.C. § 552(b), "unless the agency can demonstrate that the non-exempt portions of the document are inextricably intertwined with [the] exempt portions." *Bigwood*, 484 F. Supp. 2d at 74 (internal quotation marks omitted).

### 1. Exemption 3

Under Exemption 3, information subject to withholding under another federal statue may be withheld if the statute:

> (A) (i) requires that the matters be withheld from the public in such a manner as to leave no discretion on the issue; or
>
> (ii) establishes particular criteria for withholding or refers to particular types of matters to be withheld; and
>
> (B) if enacted after the date of enactment of the OPEN FOIA Act of 2009, specifically cites to this paragraph.

5 U.S.C. § 522(b)(3)(A), (B).

Defendants contend that pages 9–13 of the October 2019 production, located at Docket Entry 29-3, pages 10–14, are due to be withheld. This document is a Department of State Form DS-157, non-immigrant visa application, showing the headers and footers only. (*See* Doc. 29-3 at 10-14; *see also* Docs. 30-1 ¶ 20; 28-1 ¶ 41.) In addition to Exemption 3, Defendants withheld the document pursuant to Exemptions 6, 7(C), and 7(E).

Defendants invoked Exemption 3 in redacting this document under the Immigration and Nationality Act ("INA") § 222(f), which limits disclosure of Department of State and diplomatic and consular records "pertaining to the issuance or refusal of visas or permits to enter the United States," considering them "confidential." 8 U.S.C. § 1202(f). Plaintiffs contend that courts have interpreted Exemption 3 in this context to apply only to documents that were never in the possession of the subject applicant; therefore, things such as visa applications, which the applicant possessed, cannot be withheld. (Doc. 29 at 13) (citing *Medina -Hincapie v. Dep't of State*, 700 F.2d 737, 744 (D.C. Cir. 1983)). Plaintiffs argue that because the document at issue is a nonimmigrant visa application that was "arguably in the possession of one of the Plaintiffs in this action," Defendants have failed to meet their burden in withholding these documents. (*Id.*)

Defendants respond that USCIS properly partially withheld this document pursuant to Exemption 3. The *Vaughn* Indices state that the header and footer of the document were released, but the body of the document, which contains stamps and handwritten markings entered by the Department of State adjudicator, reflects adjudicative material properly withheld under Exemption 3. (Docs. 30-1 ¶ 20; 28-1 ¶ 41.) In *Medina-Hincapie*, the court found that Exemption 3 "includes information revealing the thought-processes of those who rule on the application," which supports Defendants' use of the Exemption here, not Plaintiffs' argument to the contrary. 700 F.2d at 241–42. Moreover, Plaintiffs do not challenge the other Exemptions with respect to this document. Because the *Vaughn* Indices state that the redacted material includes information about the individual applicant, as well as adjudicative material, it was properly withheld under Exemption 3.

### 2. Exemption 5

Plaintiffs assert that pages 101–121 of the October 2019 production should not have been withheld pursuant to Exemption 5. (Doc. 29 at 14–15.) As pages 101–121 do not exist in the October 2019 production, the Court assumes that Plaintiffs refer to those same pages in the August 2019 production. Defendants inform the Court that this consists of a 21-page FDNS Statement of Findings dated June 13, 2019, which was originally held in full, primarily pursuant to Exemptions 6, 7(C), and 7(E). (Docs. 30-1 ¶ 21; 28-1 ¶ 35.) This document was re-segregated to release the headers and footers and re-released to Plaintiffs in February 2020, located at Docket Entry 29-4 at pages 1–21. (Doc. 30-1 ¶ 21.) Exemption 5 was applied only to the first page of the re-segregated and re-produced Statement of Findings provided in February 2020. (*Id.* ¶ 22.) Defendants indicate that USCIS has withdrawn Exemption 5 as applied to that page. (Doc. 30 at 15; Doc. 30-1 ¶ 22.) Therefore, the issue is moot as to Exemption 5.

### 3. Exemption 6

Exemption 6 allows an agency to withhold all information about individuals in personnel, medical, and similar files when the discovery of such information would constitute an unwarranted invasion of personal privacy. 5. US.C. § 552(b)(6). Plaintiffs challenge the use of Exemption 6 as to the Statement of Findings, re-produced to Plaintiffs in February 2020. (Doc. 29-4 at 1–21.) Exemption 6 is applied to all but the first two pages of the document. (*Id.*) Plaintiffs argue that there is not enough information in the first *Vaughn* Index for Plaintiffs to determine why Exemption 6 was utilized here. Specifically, Plaintiffs assert that if the information that was withheld relates only to the Plaintiffs, then the disclosure of the information would not constitute an invasion of their personal privacy. (Doc. 29 at 15–16.)

However, the *Vaughn* Indices make clear that the information withheld includes a significant amount of personal identifying information of individuals besides Plaintiffs, including Federal law enforcement personnel and other individuals, like those who were targeted during the FDNS investigation, including their names, alien numbers, addresses, and other personal information. (Docs. 28-1 ¶ 35; 30-1 ¶ 24.) Therefore, the Court finds that Defendants have adequately articulated in the *Vaughn* Indices why this document was partially withheld pursuant to Exemption 6.

### 4. Exemptions 7(C) and 7(E)

Exemption 7(C) allows an agency to withhold "records or information compiled for law enforcement purposes, but only to the extent that the production of such law enforcement records or information . . . could reasonably be expected to constitute an unwarranted invasion of personal privacy." 5 US.C. § 552(b)(7)(C). Similarly, Exemption 7(E) allows an agency to withhold "records or information compiled for law enforcement purposes, but only to the extent that the

production of such law enforcement records or information . . . would disclose techniques and procedures for law enforcement investigations or prosecutions, or would disclose guidelines for law enforcement investigations or prosecutions if such disclosure could reasonably be expected to risk circumvention of the law." 5 US.C. § 552(b)(7)(E).

Plaintiffs challenge the use of Exemption 7(C) relating to pages 3, 5–9, 11, 87, 88–94, 98, and 101–133. (Doc. 29 at 17–18). While Plaintiffs do not identify the specific pages for which they challenge the use of Exemption 7(E), the Court assumes they challenge the same page ranges as those for Exemption 7(C), except as to page 98, for which Exemption 7(E) was not invoked.

As to Exemption 7(C), Plaintiffs assert generally that the information sought "should only [implicate] the personal privacy of Plaintiffs who have filed this action." (Doc. 29 at 18.) As to Exemption 7(E), they assert that the *Vaughn* Indices are not sufficiently specific. (*Id.* at 18–19.) But upon the Court's review of the *Vaughn* Indices, the Court determines that Eggleston's rationale as to why these documents were withheld under Exemptions 7(C) and (E) are adequate. (Doc. 28-1 ¶ 23 (relating to pages 3 and 5–9), ¶ 24 (relating to page 11), ¶ 30 (relating to page 87), ¶ 33 (relating to page 98), and ¶¶ 35–38 (relating to pages 101–133); *see also* 30-1 ¶¶ 23–24.) The Court notes that pages 88–94 are photographs that do not appear have been withheld. (*See* Doc. 29-2 at 89–95.)

With regard to Exemption 7(C), the *Vaughn* Indices each explain that some of the information in the records were withheld to protect the privacy of a law enforcement officer or other individual. And as to Exemption 7(E), first, the *Vaughn* Indices set out that each of the above documents were compiled for a law enforcement purpose and if shared, "would disclose techniques and procedures for law enforcement investigations or prosecutions, or would disclose guidelines for law enforcement investigations or prosecutions if such disclosure could reasonably

be expected to risk circumvention of the law." 5 US.C. § 552(b)(7)(E).

The undersigned does not agree with Plaintiffs' position that the *Vaughn* Indices merely contain boilerplate recitations of the statutory language in discussing what was withheld in each of the documents. (Doc. 31 at 4.) The *Vaughn* Indices describe each document, the released information, if applicable, the exemption used, and a brief description of the information redacted. *See Freedom Watch, Inc. v. Dep't of the Navy*, No. 5:13-cv-420-Oc-10PRL, 2014 WL 12571426, at *12 (M.D. Fla. Dec. 8, 2014) (finding *Vaughn* Index sufficient where it included such information.) Thus, the Indices are sufficient to show that the Defendants' claims of exemption are proper.

The withheld records include, for example, FDNS Compliance Review Reports, describing law enforcement techniques and procedures FDNS used when investigating Rominov Investments Services, Inc. (Doc. 28-1 ¶¶ 23, 37); financial documents, which were obtained to determine Rominov Investment Services, Inc.'s compliance with federal law in the course of FDNS's investigation (*id.*, ¶ 23); law enforcement database check results, which could provide individuals with insight into information contained about them in federal databases (*id.*, ¶¶ 30, 36); FDNS Statement of Findings, which could enable individuals to circumvent the law by altering documents and their behavior to avoid detection and conceal illegal activity (*id.*, ¶ 35); and emails exchanged between federal investigators and employees, which could provide insight into federal law enforcement investigations as well as law enforcement techniques, procedures, and guidelines, and enable circumvention of federal law (*id.* ¶ 38).

Further, Plaintiffs also do not contest that some of these documents were withheld because Plaintiffs failed to comply with DHS FOIA regulations necessary to obtain access to the individuals' records. Therefore, the Court finds that Defendants have adequately articulated in the

*Vaughn* Indices why the documents were partially withheld or partially withheld pursuant to Exemptions 7(C) and (E).

### 5. Reasonably Segregable Information

Finally, Plaintiffs argue that Defendants have failed to release all information from records containing exempt information that is reasonably segregable. But because this claim is so generalized and points the Court to no particular part of the record, and because I have concluded that the *Vaughn* Indices are otherwise sufficient, I recommend that the Court find this argument unpersuasive.

## IV.   RECOMMEDATION

Upon consideration of the foregoing, I **RESPECTFULLY RECOMMEND** that the Court:

1. **DENY** Plaintiffs' Motion for Summary Judgment (Doc. 29);

2. **GRANT** Defendants' Motion for Summary Judgment (Doc. 28); and

3. **DIRECT** the Clerk of Court to enter judgment in favor of Defendants and thereafter, to close the file.

## NOTICE TO PARTIES

A party has **fourteen days** from this date to file written objections to the Report and Recommendation's factual findings and legal conclusions. A party's failure to file written objections waives that party's right to challenge on appeal any unobjected-to factual finding or legal conclusion the district judge adopts from the Report and Recommendation.   *See* 11th Cir. R. 3-1.

Recommended in Orlando, Florida on July 2, 2020.

_____
EMBRY J. KIDD
UNITED STATES MAGISTRATE JUDGE

Copies furnished to:

Presiding District Judge
Counsel of Record